UNITED STATES DISTRICT COURT　　　　　FOR ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X
KRYSTYNA A. GMYREK,　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　Plaintiff,　　　　　　　　　　　　:　　MEMORANDUM
　　　　　　　　　　　　　　　　　　　　　　:　　AND ORDER
　　- against -　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　:　　04 CV 3801 (JG)
　　　　　　　　　　　　　　　　　　　　　　:
METROPOLITAN LIFE INSURANCE CO.,　　　:
　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　Defendant.　　　　　　　　　　　:
----------------------------------------------------------------- X

A P P E A R A N C E S :

　　KRYSTYNA A. GMYREK
　　　　82-00 Shore Front Parkway #4A
　　　　Rockaway Beach, NY 11693
　　　　Plaintiff *pro se*

　　CONNELLY SHEEHAN HARRIS LLP
　　　　150 S. Wacker Drive
　　　　Chicago, IL 60606
　　By:　Martin Harris

　　　　- and -

　　PROSKAUER ROSE LLP
　　　　One Newark Center
　　　　Newark, NJ 07102
　　By:　Daniel O'Donnell

　　　　Attorneys for Defendant

JOHN GLEESON, United States District Judge:

　　　　Metropolitan Life Insurance Co. ("MetLife") moves for summary judgment on

the employment discrimination claims brought by Krystyna A. Gmyrek pursuant to Title VII of

the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, ("Title VII") and the Age Discrimination

in Employment Act, 29 U.S.C. § 621 *et seq.*, ("ADEA"). Gmyrek alleges that MetLife

discriminated against her based on, variously, her age, her gender, and her Polish national origin

by (1) failing to promote her to a management position; (2) terminating her employment; (3) ceasing to conduct business in Poland; (4) refusing to cover certain medical expenses incurred by one of her clients in Poland; (5) discontinuing production of Polish-language sales brochures; (6) not providing her with updated business cards; (7) treating her "very badly;" (8) disrupting her work with office construction; (9) stealing the money generated from many of her policy renewals; (10) wrongfully rejecting several of her policy applications; and (11) mis-crediting the commissions from several of her sales. For the reasons discussed below, the motion for summary judgment is granted.

BACKGROUND[1]

Gmyrek worked for MetLife as an insurance salesperson ("sales rep") from 1996 until her termination in 2002. According to Gmyrek, MetLife discriminated against her in a variety of ways from the outset of her employment. As evidence of national-origin discrimination, for example, Gmyrek alleges that MetLife stopped doing business in Poland, stopped producing Polish-language sales brochures in 2000, and refused to cover the examination expenses of one of Gmyrek's Polish clients. MetLife claims that each of these were non-discriminatory business decisions.

Gmyrek also complains of more direct mistreatment. She alleges that MetLife never provided her with updated business cards after her business phone number was changed, *see* I Pl. Br. 68, and treated her "very badly" in general. *Id.* at 9. She also claims she was forced

---

[1] Unless otherwise noted, the facts set forth are undisputed. Gmyrek has submitted voluminous documents for my review, including a 120-page brief in opposition to MetLife's motion entitled "Opposition for MetLife's Motion for Summary Judgment and request for Jury Trial" ("I Pl. Br."), a 224-page brief in opposition to MetLife's brief entitled "Opposition for MetLife's Brief in Support of its Motion for Summary Judgment" ("II Pl. Br."), a 153-page Rule 56.1 Response, and hundreds of pages of additional discovery documents with a 20-page table of contents. This section merely summarizes the core facts relevant to Gmyrek's discrimination claims.

2

to give up her desk to a "favored man." II Pl. Br. 30, 148.  In addition, Gmyrek alleges, she inquired in 1997, 1998, 1999, 2000 and 2002 about a promotion to a recruiting manager position, but MetLife denied her the promotion because of her gender.  *See* I Pl. Br. 52.  MetLife disputes that allegation in part, claiming that "[i]n December 2002, no recruiting manager position was open or available in sales office P49," where Gmyrek worked.  MetLife's Rule 56.1 Statement ¶ 51 (citing Gmyrek Dep. 137).

MetLife fired Gmyrek on December 27, 2002 for failing to meet her Minimum Production Requirement ("MPR").  *See* Erm Aff. ¶ 16.  It is MetLife's policy to fire sales reps subject to the MPR who do not meet the requirement, unless the sales rep qualifies for an exception.  In 2001 and 2002, MetLife warned Gmyrek in writing that she was not on track to meet the half-year MPR.  *See* Gmyrek Dep. Ex. 8 (half-year MPR warning letter); Gmyrek Dep. 57-58.  In both years, however, Gmyrek met the half-year requirement.  *See* Neiman Aff. ¶ 10.  Later in 2002, MetLife warned Gmyrek on at least three occasions that she was not on track to meet the year-end MPR.  *See* Gmyrek Dep. Ex. 10 (year-end MPR warning letter); Gmyrek Dep. Ex. 11 (same); Gmyrek Dep. Ex. 14 (same).  Gmyrek did not reach the year-end MPR in that year and apparently qualified for no exception to the termination policy.  MetLife claims that Gmyrek was one of 201 sales reps in the zone that includes the office in which Gmyrek was employed whose employment was terminated in 2001 and 2002 for failing to meet the MPR.

Gmyrek claims MetLife's discrimination caused her to fall short of the MPR.  *See* I Pl. Br. 3-4 ("MetLife tried to approve [the] false statement that my end of year 2002 production" fell below the MPR and MetLife "tried to avoid responsibility from being responsible for the rest of my MPR.").  She also alleges that the MPR requirement "is only

3

pretext to cover discrimination." *Id.* at 53. As support, Gmyrek claims that MetLife stole the money from her policy renewals 81 times in 2001 and 228 times in 2002, *id.* at 8-10, that office construction hampered her production in 2002, *id.* at 4-5, that MetLife wrongfully rejected several of her policy applications, *id.* at 22 ("[u]nderwriter told me that he would not issue policy for my client"), and that MetLife mis-credited commissions from several policy sales.

Gmyrek also makes more general allegations of discrimination, pointing to MetLife's replacement of 10 older sales reps from her office, including her, with 17 young sales reps. *See* Gmyrek Dep. Ex. 2 at 4 ("MetLife discharged me and hired still new young people . . . . MetLife P 49 Agency hired in year 2000, 2001 & 2002 most young people."); II Pl. Br. 92-93 ("MetLife replaced old age employee like me . . . by younger and I was fired because of my age."). She also alleges that MetLife fired female sales reps who failed to meet the MPR but not male sales reps. In addition, she claims, seven Polish sales reps were employed in MetLife's sales office in 2000, but none were employed at the end of 2002.

Gmyrek filed an administrative charge with the Equal Employment Opportunity Commission on October 2, 2003. She brought this action on September 2, 2004.

DISCUSSION

A.  *Standard of Review*

Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if a dispute over it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

4

248 (1986). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The burden is on the moving party to demonstrate that no genuine issue exists regarding any material fact. *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1994).

In considering the motion, "all ambiguities must be resolved and all inferences drawn in favor of the non-moving party." *Id.* If the moving party identifies the absence of a genuine dispute about a particular material fact, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). In doing so, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

B.  *Employment Discrimination Claims Under Title VII and the ADEA*

Title VII makes it unlawful "for an employer . . . to hire or to discharge any individual, or otherwise to discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The ADEA makes it unlawful "for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). In a Title VII or ADEA case not involving direct or overt evidence of discriminatory conduct, courts apply the three-part burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973), to determine whether summary judgment is appropriate. First, the plaintiff must establish a prima facie case of discrimination. The burden of production at this stage of the inquiry is "minimal," and satisfying it does not require actual evidence of discrimination. *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 153 (2d Cir. 2000). A prima facie

5

case is established when the plaintiff produces some evidence that (1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination. *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir. 2001); *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000). Only the third and fourth elements are in dispute in this case.

A plaintiff "sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment." *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (internal quotation marks omitted). For a change in conditions of employment to be "materially adverse," it must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Joseph v. Leavitt*, 465 F.3d 87, 90 (2d Cir. 2006) (internal quotation marks and citation omitted). Termination of employment, a decrease in wage or salary, a less-distinguished title, or a material loss of benefits or responsibilities, for example, can all constitute materially adverse changes. *Id.*

Circumstances that give rise to an "inference of discrimination" can include, but are not limited to, actions or comments by decision-makers that can be interpreted to reflect a discriminatory animus, preferential treatment of employees outside the protected class, or a pattern of recommending the plaintiff for positions for which he is not qualified and failing to suggest him for positions for which he is qualified. *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir. 1996).

If the plaintiff is able to establish a prima facie case of discrimination, the burden of production then shifts to the defendant to articulate a legitimate nondiscriminatory reason for the challenged employment action. *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 91

(2d Cir. 2001). Then, if the defendant is able to articulate such a reason, the plaintiff must present evidence from which it can be inferred that the defendant's proffered reason was not the true reason, but rather is a pretext for discrimination. *Id.* A court will grant a defendant's motion for summary judgment when the plaintiff fails to establish a prima facie case or fails to sufficiently rebut the legitimate reason offered by the defendant for the adverse employment action. *See id.*

C. *The Failure to Promote Claim*

MetLife moves for summary judgment on Gmyrek's claim that MetLife discriminatorily failed to promote her to a management position. A failure to promote claim requires evidence that, *inter alia*, the desired position was open and available, that the plaintiff was qualified, and that plaintiff applied for and was denied a promotion to that position. *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 709 (2d Cir. 1998). MetLife cites certain testimony by Gmyrek to support the proposition that "[i]n December 2002, no recruiting manager position was open or available" in her sales office. MetLife's Rule 56.1 Statement ¶ 51 (citing Gmyrek Dep. 137). But the cited testimony does not necessarily go so far. Gmyrek testified that when she asked Carmine Campo about a promotion to a recruiting manager position, Campo responded in December of 2002 that MetLife "didn't need one." Gmyrek Dep. 137. Moreover, Gmyrek maintains that she "did not admit[] that the promotion . . . was not open or available." I Pl. Br. 52. Viewing the testimony in the light most favorable to Gmyrek, MetLife does not conclusively demonstrate that the recruiting manager position was not open or available to Gmyrek.

Nevertheless, Gmyrek does not meet her burden of production for this element of her prima facie case. She repeatedly asserts that, for example, she "did not admit[] that the

7

promotion she desired was not open or available, but *MetLife did it in bad faith*" and that she "did not receive[] Recruiting Manager Position or anything similar, because [she is] a woman."  I Pl. Br. 52; *see also id.* at 44-46.  But these unsworn assertions are not evidence that the position was open or available.  I therefore grant summary judgment for MetLife on the failure to promote claim.[2]

D.     *The Termination Claims*

MetLife moves for summary judgment on Gmyrek's claims that she was fired on account of her age, gender, and national origin.  This is granted, because each such claim fails as a matter of law.

   1.     Age Discrimination

Gmyrek claims MetLife terminated her employment because of her age, in violation of the ADEA.  As support, she asserts that MetLife replaced 10 older sales reps, including her, with 17 "young" sales reps.  Gmyrek Dep. Ex. 2 at 4; *see also* II Pl. Br. 92-93 ("MetLife replaced old age employee like me . . . by younger and I was fired because of my age.").  But this characterization of the circumstances of Gmyrek's termination is not sufficient to support an inference of discrimination.  Generalized "allegations of replacement by younger workers do not, without more, prove discrimination," *O'Sullivan v. New York Times*, 37 F. Supp. 2d 307, 319 (S.D.N.Y. 1999), especially when, as here, the plaintiff offers no evidence of how much younger the replacements were.  *Cf. O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S.

---

[2] I may not consider Gmyrek's failure to promote claims predicated on MetLife's alleged 1997, 1998, 1999, and 2000 denials of a promotion because those employment decisions occurred more than 300 days before Gmyrek filed her administrative charge.  *See Van Zandt v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996); *Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d 20, 23 (2d Cir. 1985).  Moreover, even were I to entertain those claims, I would conclude they lacked merit because Gmyrek points to no evidence that the position she sought was available when she asked for it.

308, 313 (1996) ("In the age-discrimination context . . . an inference [of discriminatory causation] cannot be drawn from the replacement of one worker with another worker insignificantly younger."). And Gmyrek's allegation that 10 older sales reps were replaced does not rescue her prima facie case, lacking some context illustrating why the number 10 implies discrimination. *See Raskin v. The Wyatt Co.*, 125 F.3d 55, 67-68 (2d Cir. 1997). Gmyrek therefore does not establish a prima facie case that MetLife's termination of her employment constituted age discrimination.

        2.        <u>Gender Discrimination</u>

Gmyrek claims MetLife wrongfully terminated her employment because of her gender. She argues that this is evidenced by the fact that MetLife fired female sales reps who failed to meet the MPR, including her, but did not fire certain other male sales reps who, she alleges, also failed to meet the MPR. *See, e.g.*, Gmyrek Dep. Ex. 2 at 6. Even if I found Gmyrek made out a prima facie case on this claim I would still dismiss it, because Gmyrek presents no evidence that MetLife's legitimate reason for terminating her employment -- the MPR -- was a pretext for gender discrimination. In particular, she points to no admissible evidence that the male sales reps she refers to were similarly situated but not fired. *See Shumway v. UPS*, 118 F.3d 60, 64 (2d Cir. 1997) (finding a plaintiff can meet her burden of proving the employer acted on pretext by showing the employer treated a similarly situated employee differently, but in order to do so, the other employee or employees must be "similarly situated in all material respects"). For instance, Gmyrek produces no evidence that the male employees she points to were subject to the MPR (as Gmyrek was) and did not qualify for an exception (as Gmyrek did

9

not).[3] Gmyrek's claim of gender discrimination based on the termination of her employment would thus fail even if I found an inference of discrimination.

3.  National Origin Discrimination

Gmyrek claims that MetLife wrongfully terminated her employment because of her Polish national origin. Gmyrek may establish a prima facie case for this claim. It is undisputed that Gmyrek's national origin puts her in a protected class, and that she suffered the adverse employment action of termination of employment. There is a genuine dispute about whether Gmyrek was qualified for her position: while she did not reach the MPR -- a requirement for her employment -- she says she did not do so because of MetLife's discrimination. *See* I Pl. Br. 3. And Gmyrek contends that the fact that there were seven Polish sales reps employed in the sales office in 2000, but none at the end of 2002, establishes an inference of discrimination.

I need not decide whether Gmyrek has established a prima facie case on these allegations, however, because she fails to point to evidence of pretext sufficient to rebut MetLife's legitimate nondiscriminatory reason for its termination of her employment. MetLife provides evidence that Gmyrek was one of 201 sales reps whose employment was terminated in 2001 and 2002 for failure to meet the MPR. This is a sufficient nondiscriminatory reason for Gmyrek's discharge. *See Chastven v. CIGNA Corp.*, No. 97 Civ. 6013 (RPP), 1999 U.S. Dist. LEXIS 17727, at *38 (S.D.N.Y. Nov. 12, 1999) (collecting cases holding poor performance and failure to meet sales quota is sufficient nondiscriminatory reason for termination of

---

[3] Similarly, Gmyrek cannot establish pretext through her claim that she was forced to give up her desk for a "favored man," II Pl. Br. 30, 148, because she does not demonstrate that the man was "favored" for an unlawful reason.

employment). Gmyrek argues that the MPR issue was a pretext for her discharge because seven Polish sales reps employed in Gmyrek's sales office in early 2000 were no longer working at MetLife at the end of 2002. But, as with the gender discrimination claim, this allegation lacks sufficient context to establish pretext. Gmyrek does not produce evidence that the non-Polish employees who did not reach the MPR were not terminated. *See Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 568 (2d Cir. 2000) (finding no pretext when the plaintiff alleging national-origin discrimination failed to provide evidence she was similarly situated to the employees whose violations of the policy the employer allegedly overlooked). Nor has she produced evidence that the other Polish sales reps she claims were terminated by the end of 2002 were the victims of national-origin discrimination. The national-origin termination claim therefore fails as a matter of law.

E. *Additional Claims of National-Origin Discrimination.*

In addition, Gmyrek claims discrimination based on her Polish national origin because MetLife (1) ceased conducting business in Poland; (2) refused to cover the medical examination expenses incurred by one of Gmyrek's clients in Poland; (3) discontinued production of Polish-language sales brochures in 2000, which made Gmyrek's clients unhappy; and (4) did not provide Gmyrek with updated business cards after her business phone number was changed. None of these allegations rise to the level of an adverse employment action, because they do not constitute materially adverse changes in the terms and conditions of Gmyrek's employment. Gmyrek does not even purport to claim that the first two acts affected her. The third act -- the discontinuation of Polish-language sales brochures -- did not adversely affect Gmyrek's employment because Gmyrek admitted, and does not dispute, that she was able

11

to sell life insurance policies to her Polish-speaking clients even after the brochures had run out. *See* Gmyrek Dep. 94-95. And the mere failure to provide updated business cards is not a materially adverse change in the terms and conditions of employment. *See Nakis v. Potter*, No. 01 Civ. 10047(HBP), 2004 WL 2903718, at *20 (S.D.N.Y. Dec. 15, 2004) ("[T]he delay in providing plaintiff with bathroom keys, telephone directories and business cards . . . do[es] not rise to the level of materially adverse changes in the terms and conditions of employment."). Accordingly, Gmyrek does not establish a prima facie case for any of these claims.[4]

F.   *Gmyrek's Other Claims*

Gmyrek claims she was discriminated against because MetLife treated her "very badly," I. Pl. Br. 9; prevented her from successfully performing her job in 2002 because of construction in her office, *see* I Pl. Br. 4; stole the money from her policy renewals "81 times in 2001" and "228 times in 2002," I Pl. Br. 8-10; wrongfully rejected several of her policy applications; and mis-credited the commissions from a handful of other policy sales.[5] Gmyrek fails to establish a prima facie case with respect to any of these claims. Most do not constitute adverse employment actions, and in any event there is no evidence that any of the challenged actions occurred in circumstances giving rise to an inference of discrimination.[6]

---

[4]   Moreover, because Gmyrek provides no evidence that any of these acts had an impact on her ability to meet the year-end MPR, the allegations cannot support her claim that the MPR was pretext for discriminatory discharge.

[5]   Gmyrek also claims gender discrimination because a policy application by Lucyna Gorska was rejected, allegedly because she was pregnant. II Pl. Br. 71. Gmyrek lacks standing to bring this claim because she was not injured by the alleged conduct. To the extent Gmyrek predicates her gender discrimination on her claim that she had to give up her desk to a "favored man," *id.* at 38, the claim fails because having to give up one's desk is an inconvenience, not an adverse change in the terms and conditions of one's employment.

[6]   Accordingly, the allegations do not support Gmyrek's claim that her failure to meet the MPR was a pretext for discrimination.

12

CONCLUSION

For the reasons set forth above, the motion for summary judgment is granted.[7]

The Clerk is respectfully directed to enter judgment accordingly and close this case.

So ordered.

John Gleeson, U.S.D.J.

Dated: Brooklyn, New York
       August 20, 2007

---

[7] Accordingly, I need not address MetLife's additional arguments in support of the motion.